Good afternoon. If it may please the Court, I'm Amitai Schwartz, appearing on behalf of the Plaintiff Appellant Don Antoine. This is the case where I actually did go to the jury, and there was a jury verdict in favor of the plaintiff. Don Antoine was forcibly attacked in what's called a safety cell at the Sacramento County Jail, and then he was attached to the grate on the floor of that cell like an animal. In the old days, they used to call this kind of a situation a dungeon. The jury appreciated what had happened, and the jury awarded $20,000 in compensatory damages for excessive force and for punitive restraint. The defendants then brought a motion and also ordered punitive damages of $150,000 against the five police officers who were noted to be involved. The defendants then brought a motion for a new trial claiming that a — first of all, that there was insufficient evidence to support the verdict, that there were evidentiary errors, and that an instruction was incorrect. The trial judge found that there was sufficient evidence to support the jury's verdict with respect to liability, which is an important finding, because it means that, at least for purposes of the — of this Court's review, those findings should be read in the light most favorable to the verdict, that the facts are not open to dispute at this point. The district judge reviewed those facts and found that there was sufficient support to support the liability findings on both — on both issues. The judge also held that the evidentiary errors did not prejudice the defendants, but the — but the Court did grant a new trial on the issue of damages, and then later granted reconsideration where it granted a new trial as to the entire case. The crux of the district court's decision revolves around the question of whether $20,000 in compensatory damages is a nominal amount. To most people — Well, you don't mean it's a nominal amount. You mean whether it was an award for nominal damages. Yeah, whether $20,000 was meant to be an — an award of nominal damages. And I think what that comes down to is $20,000, a nominal amount, that's simply a symbol, that's simply a trifle, that's simply a minimal amount. To most people, $20,000 — But more than that, I mean, the cases in which nominal damages — I mean, I don't understand how this case could be a nominal damages case on any theory. Nominal damages comes up ordinarily in cases like procedural due process where there's a first amendment, where no — without a nominal damages instruction, no one's going to really see what the injury was. Right? Here, whether the guy was hurt or not, he was at least beaten and physically treated. So we have the blue angels out here. So is there any case in which a nominal damages instruction was given that's of that character? Not that I know of. Part of the — part of the defendant's argument is that they were entitled to a nominal damages instruction, but they're only entitled to a nominal damages instruction if, as Judge Berzon just stated it, there's — there's no real actual injury that it's a — Who asked — did you ask for the nominal damages? No. No, we opposed them. We opposed the nominal damages throughout. But what about this constitutional injury? Where did that come from? Well, the constitutional injury is a 1983 case. That's what — that's why they were in court. What kind of damages do you get for constitutional injury without physical damage? Well, you can get — certainly can get emotional stress damages, and you certainly can get damages for humiliation. In other words, the district court kept forgetting that. He kept saying, well, they could well have found that there was no — that all the injuries were from the prior incident and still have given the — but thought that they could give damages for some abstract constitutional injury for getting beaten, even if you're not hurt, as an abstract injury. It seems odd to me. So I'm asking, is there any excessive force case in which a nominal damages case — injury instruction has been given that you know of that? Well, I think nominal damages instructions in the district courts are given relatively frequently. Plaintiffs — defendants ask for them. Plaintiffs don't object. They're given, but they don't amount to anything. So, you know, you had the Guy case where there was a — where there was a nominal damages verdict, and that was an excessive force case. And that was what? And that was an excessive force case. Oh, it was. But do you think the jury got some sense from the instructions given as to what a constitutional harm was and how to measure damages for it? Well, sure. Instruction — I think it was Instruction 17, written Instruction 17, gave the jury a very — the standard blueprint for the types of injuries, harm, damages that will — that are compensable under Section 1983. It included emotional distress, it included physical injury, and so forth. When the district judge, in answer to the jury's question about what is harm, answered it by saying it includes constitutional injury, he referred them explicitly back to Instructions No. 10 and 11, which were the two instructions that defined what Section 1983 was about, what the constitutional deprivation is about, and how it's compensated. There was never any argument here in this case that he was — that Don Antwine was somehow entitled to hedonic damages or that he was entitled to the abstract value of his constitutional rights. The whole case was tried over what happened in that — in that safety cell when he was attacked and when he was attached to the grate. He described how he felt. He described his physical injuries after being attacked. Deputy Wade choked him. He talked about feeling like a caged animal. He talked about what it felt like to feel like he was never going to get out of there. He related it to his Army experience. He gave a great deal of testimony, certainly to support the jury's finding. And when the jury came up with $20,000, we don't know why they said $20,000. It's very close to the amount of the — of the Kaiser — Kaiser Medical Center bill for the repair of his larynx, which was about $19,000-some. It could have been some sort of a compromise among the jurors, but it certainly wasn't intended to be nominal damages. And the other way we know it wasn't intended to be merely symbolic is because they went on to award punitive damages as well. So to the extent that they meant to deter or to the extent that they meant to teach the county of — the county jailors a lesson by their verdict, they did that not in the compensatory damages. They did that in the $150,000 in punitive damages. The district court reading of the jury question seemed completely illogical in the sense that, first off, the defendants waived this whole nominal damages issue. The defendants — the district judge said explicitly the failure to give instruction number 19, that was the old nominal damages number, doesn't prejudice the defendants in any way that I can see, but the giving of it benefits the plaintiff. So if plaintiff doesn't want it, I don't see any reason to give it. And then the response to that is, by the defense attorney, is fair enough. So fair enough sounds like he got exactly what would have been fair under the circumstances, and that he agreed he wasn't prejudiced. So this jury question comes in, and the jury question is, with respect to the plaintiff's verdict.  Fair enough usually means, all right, I hear what you're saying. I mean, to ascribe to that statement, I agree with you that it's fair, rather than there's no point in arguing with you anymore. I don't — it seems a little head in the sand. Well, he argued about everything else. And on this one, he says that's fair. So, well, I read it as an acquiescence in the instruction. It's certainly not an argument such as what you were alluding to in the case that just preceded us, where under Rule 51, the attorney objecting to an instruction is supposed to give the reasons why that instruction is inappropriate. Saying fair enough is not giving reasons why the instruction is inappropriate. But I want to get to the question, because this was the basis for the district judge's order of a new trial. They get a question, and it says, Question No. 2 on the special verdict form, which, again, the defendants did not object to, asks, and this is Question 2, only relates to the excessive force claim. It doesn't relate to the punitive restraint claim. It says excessive force was a substantial factor in bringing about plaintiff's injury, harm or damage. It's a question, what is harm? If the answer is yes to any of the injury, harm or damages, is the answer a yes? It seems like a logical question. I mean, you know, you get lay jurors in there, and you have these three words. It sounds pretty much the same, but maybe they're not. And for all we know, and for all the district judge knew, one of the jurors said, What does injury, harm or damages mean? And the four person of the jury said, well, let's go ask the judge. So they go and ask the judge.  Kagan. Kagan. And which instruction was that in? Excuse me? 217? Which instruction was that in? That was in the – it was in the special verdict form. Oh, on the form, okay. It was Question 2 on the special verdict form. That's actually – Question 4 on the special verdict form is worded exactly the same way, but they didn't ask any question about Question Number 4 on the special verdict form. So the – so it's a logical question for a lay juror, and the judge answers it appropriately. I mean, he says, refer back to the jury, to the instructions I've already given you. But somehow, after Don Antwon has obtained his verdict and punitive damages have been imposed against the jailers, all of a sudden this question becomes the basis of reading a whole lot into what was going on. And somehow the district judge felt that the jury was somehow confused. And it's plain and simple error. And it would be somewhat helpful to me to know what we are – what our standard of review is at this point. Is it abuse of discretion or what is it? Well, the granting of a new trial. Well, the basic standard is abuse of discretion. The – to the extent that there are questions of law involved, of course, it's de – to the extent that you're – But to be more specific, do we look at it as to whether – whether we would have reversed the verdict, had it been allowed to stand, for the same reason that the district judge did? I mean, is that – are they basically coincident questions? I.e., if somebody had come here – if he had not granted the new trial and the defendants had come here and said the same thing they said to him, would we have had to reverse? Is that what we're trying to figure out? Yes. Yeah. I think – I think it's the same standard at this point, because he – he's essentially – he's essentially saying that he made an error of law, that he, being the district judge, made an error of law, and he calls it, quote, plain and simple, because he recognizes that there was an injunction to it. So if he made an error of law, then the issue before this Court is to determine whether the district judge was legally correct. And the answer to that question is no, he was not. The – there was – he was reading – Well, so that requires us to know under what circumstances. Is it mandatory to give a nominal damages instruction? I'm leaving aside any waiver questions. Okay. And can you concisely answer that question? Yes. Well, I'll try. First of all, the plaintiff has to ask for it, or the defendant has to ask for it. Secondly, if there is a theory put forth by either the plaintiff or the defendants that there is a constitutional deprivation without actual damage, if there is such a theory presented, then like any other theory presented. So basically, we need to look at the trial transcript, and particularly the closing arguments, to see whether there was any such theory. And you said there wasn't. Right. Right. Yes, it wasn't the theory. So moving on to – once the district judge granted the new trial as to damages, then he – he then – Let me ask you one question. The judge inserted in this answer to the question, it also reminds you, in this case which arises under the Constitution, injury includes not just physical injuries, but constitutional injuries, as they are discussed in Instructions 10 and 11. I don't quite know why he did, and I don't know whether, when he says you don't need physical injuries, that excludes – he's not – he's only talking about actual body vital injuries, or he means to exclude pain and suffering, or he means to exclude medical bills, or whatever he's excluding. I'm not sure what – or what the jury would think. Did anybody say to the jury or tell the jury, we want recovery not just for physical events, but for the violation of a constitutional right? Not in that way. They said they wanted damages for the physical injury, for the emotional distress, for the humiliation and so forth, due to the constitutional deprivation. But they didn't ask for the – Who's they? Well, I'm sorry, the plaintiff's attorneys. Oh, you weren't the plaintiff's attorneys? No, I was not. Okay. No, I was not. So they did not ask for a damages based on a – a – Extract value of constitutional rights. The answer is no. That was – that was my question. Was the reason for granting a new trial the answer given to that question to the jury or not giving the nominal damages? What reason did the district court give? Did he say I shouldn't have said anything about constitutional injury, or did he say I shouldn't have given the nominal damage – I should have given a nominal damages instruction or both? No. He said – he said that the talking about constitutional injury confused the matter, but he said that his error was in not giving the nominal damages instruction. Because – because the district judge – the district judge interpreted this question from the jury about harm, injury or damages in light of the verdict. And he said that in part because the district judge believed that the $20,000 might have been meant to be nominal damages. And he – he said that in part because – Could I just go back a minute to where we were before? Ms. DeFries was the lawyer for the plaintiff, right? Ms. DeFries, yes. Well, she is the one who raised this constitutional injury point. She did ask for that. Yes. But she asked for it in – but she explained it. She asked it in the context of – she asked for – she asked for that to be included, but she asked for it in the context of so long as they know that they're deciding a constitutional rights case. It's not just – the injury we're talking about is not just physical, but it's also constitutional injury. Because this is not a personal injury matter. It's a constitutional violation case. Right. Which I read and which she meant as this is a – this is a matter of constitutional rights. This is not a matter of a personal injury matter of somebody injuring themselves in a jail cell. Or – and it's also not restricted to the physical damages. It includes the other types of damages that are described in Instruction No. 17, which include the emotional distress. What does it mean to say injury can be constitutional injury as well as physical injury? I understand what it means to say it doesn't have to be physical injury because it can be emotional damages. But what does it mean to say it can be constitutional injury as well as physical injury? Well, I don't – you know, I don't know that there's an answer to that, because, you know, you've got – you've got lawyers think – talking on their feet in the middle of, you know, trying to respond to a question. It's very good. Is it reasonable – as I understand what the judge ultimately concluded was, having been told that you can have a constitutional injury, they could have thought that that means you can get damages simply for lying there and thinking, oh, my goodness, my constitutional rights are being violated, I have emotional injury, for example, rather than, you know, everything hurts me and I'm miserable and I'm humiliated, and that's why I have emotional damages or emotional injury. And so then he says, I gather, and maybe they thought that they could give $20,000 for that. Well, but there may be, but the district judge's job at this point is to try to reconcile the verdict and to do everything that the district court can do to reconcile that verdict. And to isolate this – these couple words and then take this whole thing away is insupportable. The – with respect to the last issue on the – whether or not there should have been a full trial, assuming the district court was correct, which I'm not prepared to admit, obviously, there was no reason to grant the motion for reconsideration. If the issue that the district court was concerned about in terms of trying both liability and damages separately was that the defendants wouldn't get a fair trial because Don Antron's physical injuries were actually caused by the scuffle that he had before he was brought to the jail, it would have been very easy for the district court to say, well, it's very easy to conduct a retrial on damages only where Mr. Antron described his injuries, both physical and emotional, and his humiliation, and the defense then would have cross-examined him and put in evidence and said, and isn't it true that you had a scuffle with firefighters and police and so forth, and tried to impeach his evidence that the damages were in fact the same? Now, if we agreed with that piece and not the other piece, then what would happen if there would be a third trial on damages? What would happen if there were a third trial on damages? No, that's what would happen, right? If we agreed that he shouldn't have overturned the liability, but he could have overturned the damages, then there would be another trial. And that's what would happen at the third trial. But it seems to me that would have been very workable. And to take the whole thing away, because on the motion for reconsideration, including the punitive damages, because the judge could envision how this was going to play out, again, is unsupportable. Finally, I just want to address the qualified immunity. Qualified immunity is only raised when you can have about 30 seconds to that. You're almost double your time now. Okay. Well, maybe you had 15 minutes, in which case you can have a minute. All right. Well, then I'll sit down, and I'll come back for rebuttal. Thank you. Okay. Good afternoon, Your Honors. Robert Chalfant of hearing for all of the individual defendants. I was one of the attorneys who tried this case twice. And this case is about what happens when Plaintiff's counsel makes a tactical decision to constantly, basically to mislead the trial judge so that he misinstructs the jury as to the appropriate law. What was the misinstruction? I'm sorry. What was the misinstruction? Well, confusing the district judge as to the Kerry v. Fife case. I'm sorry. The problem is that the lawyer confused the district judge? Yes. And it just came up in your argument, where you're asking what is this constitutional injury. It's continuing to object to the introduction of the nominal damage instruction while pushing a theory that allows the jury to value the abstract value of constitutional rights. Well, did they push that theory in terms of the facts or the argument? Did they ever get up and tell the jury that they should give them damages for – because he was beaten, even though it didn't bother him otherwise? He wasn't upset and he wasn't hurt or anything. I mean, the hold, it seems to me, in the district judge's consideration of this was forgetting about emotional distress damages. He kept saying, well, they could have found that he wasn't physically – that he wasn't actually hurt. But he never deals with the fact that it's hard to see how, if they thought he was in fact – that the sequence happened, they could find that there wasn't emotional distress damages. When you say the sequence happened, I think where the Court's tripping up on that is you're looking at the force issue. At the what? At the excessive force claim, because there's two claims before this jury. Right. The other is merely the act of being great. Change, used restraints. But they found liability on both – on both grounds. Correct. Right. So they did find there was excessive force. Well, we don't know what the ground is. We do know they checked a box on the verdict form. As we argued in our brief, the judge confused those two issues. He made it so that you could find excessive force and a punitive restraint based on the same facts. And when you confuse those two issues, then we're left not knowing what it was they found. They argued that grading was a use of force. The district judge actually told the jury, the mere act you use restraints in the safety cell can be a use of force. That's a use of force issue. And we were objecting, saying, no, it's not. Under Graham v. Connor and the other cases, you have to identify the precise constitutional standard that applies to what occurred and analyze it under that standard. And when you conflate those two and tie them together, we're left in this case with a verdict that we don't know what they found. Yes, they checked both boxes, but they very well could have found Don Antwon – a verdict for Don Antwon on the excessive force issue merely because they used the grade. Now, going back to the issue of the nominal damage instruction, I think when this Emotional distress damages don't exist automatically. It's – it was a contested issue at this trial. Every element of this gentleman's damages, nothing was conceded. Everything was thought about. And he'd been through basically World War III before he even came into the jail. I don't know that there's any proof. When the facts are disputed, when it's disputed whether or not he suffered any actual injury, I think the judge should give that nominal damage instruction. And that was your question, Judge Berzon. When should this be given? And I believe it's when facts are contested. On the issue of damages, when one party gets up and says, I have all these injuries, and the other party consistently throughout the trial of this case, the defense says – But he also says, I was humiliated, I felt awful, I, you know, I was terribly upset and depressed and all that as well, right? Didn't he say that as well? He said that, but the jury doesn't have to believe any of that. No, he doesn't, but they're entitled to. So, therefore, the notion that he – they would have found that he was perfectly not bothered at all and didn't affect him emotionally at all, and they were going to give him damages simply for the fact that something unconstitutional was done with him is relatively far-fetched on this record. Now, what if the jury didn't, though? I mean, that's where we're at with the case. What if the jury doesn't believe he has any emotional distress? He was so drunk – the facts of trial were that he passed out and slept in the safety cell after being released from the handcuffs, and eventually woke up complaining of rib pain. What if the jury believed he'd been in so many different things with so many different people, was so drunk, didn't know what had happened to him, gets up, files a lawsuit against the county, and so they find the constitutional violation, but don't believe he suffered anything. They didn't find him credible when he sat there and said, this hurt my feelings. I tried to stand up, you know, I'm a good guy, I've never been arrested, this really hurt my feelings, and they just said, forget it. We just don't like the practice of grading. We're going to find a constitutional violation for that. We think that's also excessive for us because that's what the judge told us we could do. But now we can figure out what value we want to assign that constitutional right. It's open-ended. There's nothing setting the limit with the force of law that if they find that, which was our theory, they had to award $1 versus – pursuant to Kerry v. Pythas. And that's the way the case was tried. This issue, the issue of the nominal damage instruction, isn't reviewed day and night. It's reviewed for an abuse of discretion. The judge's formulation of instructions, that's abuse of discretion. If – under the abuse of discretion, if any group of people were to say, well, you're disagreeing with Mr. Schwartz with regard to whether we look at it as if we were being asked to overturn this verdict? I do. It's an abuse of discretion standard to overturn the verdict on the nominal damage instruction – on the instructional error regarding damages, including the statement. But as to whether there was an instructional error, is that an abuse of discretion standard? I believe it was. There's cases that separate. One is if you're saying that it's an incomplete instruction, that's denumbered under the Dang line of cases. If you're arguing that the judge's formulation of instruction – But those are – the cases you're now citing me are review – on review, right? They're what appellate courts do with instructional error. Yes. Right. And that's – and my basic question to you is, are we looking at this as if it was done by an appellate court or as if somebody asked us to do the same thing, and now you're citing to me appellate cases, so you seem to be saying yes? I apologize if I don't – I'm not making sense of Your Honor's question. What I think I'm saying is that a judge's grant of a new trial is abuse of discretion. Right. His consideration of all the instructions, whether he adequately instructed the jury and whether he left out instructions or left in instructions, that's abuse of discretion. If you go to a certain instruction, like the Fourteenth Amendment, which we have, I think this Court picks that up de novo, and I think starts fresh on reviewing that particular instruction for instructional error. You're essentially saying the points you want us to review, it's de novo, but the points that he reviewed, it's not de novo. That's what you're saying. I don't make the standards, but that's what I think they are. And it's confusing. That's the way I understand it. And my understanding is, under that abuse of discretion standard, if any of the grounds the judge relied on are reasonable, this Court has to affirm his grant of a new trial. And I think it is reasonable in this case. In practice, the nominal damage instruction comes in in almost every excessive force case I've done. I've never seen it not given, other than this case, where a judge is under a mistake of law, thinks that that's somehow one party or another is entitled to that instruction. Here he called it a plaintiff's instruction. But it's not, because the Ninth Circuit standard for when you get an instruction, which is the party is entitled to an instruction if it's an accurate statement of the law, and the facts support giving it. Kennedy. You think that it's likely a reasonable chance that the jury said, well, we're going to award a verdict on principle for the violation of a constitutional right, and then we're going to give them $20,000 for the violation of that abstract right, and then we're going to give them $150,000 in addition for the violation of that abstract right? I do. And it comes from living through the trial, seeing the evidence that came out, being there with the judge, the plaintiff on the stand. And there's a number of big red flags with this verdict. When you look at the numbers of the punitive damages, plaintiff didn't even put all the officers in the room. We don't even know if two of them were in the safety cell and were the ones who used restraints, Reeve and Britton. Well, the abstract, if the 20,000 for the abstract right, that would involve a deliberate violation of the Constitution by the officers. And there's no physical injury, no actual damage. It's just for their willfully violating his rights. And then again, they give them a second verdict for that willfully violating the rights. There are no damages. So they pick up 20,000 first for that and then 150,000 for that. As the district court noted – I mean, what damage do you think the measure of damage is for the violation of the Constitution? Why did the – why 20 and 150, why not just 170 the first time? I think you would have had to have been in the jury room deliberating with them to know. But when you have a number of them – Well, then none of us know, and why shouldn't we leave the verdict? Now, it doesn't make a lot of sense to me that giving an abstract right violation, they say, well, that's 20, now we're going to add 150. Well, the 50, you know, the punitive damage were only based on rank, not involvement or not the facts of what those individuals did. They gave 50 for the sergeant and 25 per deputy. The jury instruction, another instructional error that the Court recognized is it told them the standard punitive damage instruction, which they have to consider the proportionality of any actual injury to – But there wasn't really any actual injury in the – under your theory that the 20,000 is for a theoretical injury because of the violation of the Constitution. Well, let me – And then another 150 for the same violation of the Constitution without any more injuries, because there weren't any injuries in the first place. I think it occurred like this, Your Honor. I think they tried to figure out what the value of a constitutional injury is, which I don't – that's why they need the instruction. It's been argued that I should have argued the constitutional injury is worth $1. If that's all you find, if you think his rights were violated but don't find actual injury, give him a dollar. But the argument's absurd. I don't think you can tell a jury without a judge telling them this is the actual law on that subject, that a constitutional injury is worth $1. I just don't think you can say that with a straight face, never. It almost sounds like a bad joke. Did you hear the one about the defense attorney who told – they went to trial, they said he choked this client and they chained him to a grate that somebody had urinated in or defecated in before? Guess what? He asked the jury to award him a dollar. Much more – but it seems so infinitely more likely that put that way, they'd say, and the guy was really upset and he should have been, $20,000. Well, that's why we defer to the district judge, because we can all sit here and try to wonder what the jury did in that room. Let me ask you one more question and hopefully we'll finish somewhere near on time this time, because I'm hungry. The – what about – what is the – assuming everything else, why should he have upset the liability verdict? Why should he have upset the liability verdict? Because there was instructional error. I'm sorry. I know, but what does it have to do with why they couldn't have just retried the damages? The damages, if you're talking about the retrial, where he ordered on a motion for reconsideration that the whole case goes back to the jury. That was based on gasoline products. We had filed a motion for reconsideration saying the individual defendant's Seventh Amendment right to trial would be violated, because the trial of this case by plaintiff was to throw as much stuff against the wall as possible and hope that they disliked something the defendant deputies did. But there was no basis for upsetting the liability. You may have had a lot of basis on the retrial for damages to essentially put in the whole – the whole – either the actual transcript on the merits or even put on the merits again, but not to upset the liability. The way the district judge found it, and which can only be reversed for clear error, is he thought, well, since the jury was given the option of finding excessive force for being chained to the grate, excessive force for possibly being punched, excessive force for being choked by one deputy but not the others, excessive force for being detested by the other. Well, no, but that doesn't matter. I mean, why does it matter to the second jury why the first jury found them liable? That doesn't make a difference, does it? Because you're going to ask them to do it. You know, in unanimity on the first, the first jury did not have to be unanimous as to those facts, did they? They don't. But the second jury is going to have to know what particular act was found liable. If they weren't found liable, let's say they're not. But they didn't have to find any particular fact liable. Well, what you're saying, in effect, is that you can go back and retry using a second jury facts that may have never found liability for the first. But because you're never going to know what was found liability for the first, and the jurors didn't know among themselves. Presumably, they have a vote and they say, do you think there was liability for something or other? Yes, there was. There's no unanimity requirement as to what it was on, and therefore, there's no reason to worry about it. I don't think that's the way we saw it playing out in the district court level. I think the Court was seriously concerned that there were a number of discrete acts that could have been the basis for liability. I understand that, but it seems like an erroneous concern, because he was assuming that there had to be some jury unanimity as to what they were finding the excessive force on, and there wasn't. It's not so. Well, what if all the jurors had found that one particular act wasn't good enough for liability? But it never would have been incorporated in the verdict, because the verdict does not depend on that in any way. I agree with the district judge. I think that when you allow the second court to go back and a second jury to go back and value things that maybe nobody bought into, let's say all they found was the gradient, was an excessive force and a punitive restraint, and now you tell the second jury. But it certainly doesn't deprive you of any jury right. I mean, you start by saying because you have a Seventh Amendment right to jury problem and you don't, because the – essentially, you're going to be directing the second jury that there was excessive force here, period, the end, not as to what it was. And the courts have the opinion that they can parse out each particular act and figure that out through the transcripts? Or then it's your job to put on whatever you need to put on to get the damages straight, but that doesn't have anything to do with the Seventh Amendment deprivation of the Seventh Amendment right to jury trial. What I would argue, then, Your Honor – I'm sorry, Judge Bullock. Go ahead, Your Honor. It's just that, as stated earlier, the judge's motion for reconsideration, this issue was briefed, the motion for reconsideration. He even allowed supplemental briefing to try to explain it to him, and he couldn't figure it out. But he seemed to be operating on an erroneous premise. Well, I think we have to get to Judge Bullock. I'm sorry, Judge Bullock. The judge seems to have put great weight on an apparent inconsistency between Strasura as something that was likely to lead the jury astray, and the instruction that he gave, that he thought that the instruction that he gave would have the same flaw that Strasura did. Is that really, do you think, a defensible position? Defensible to the point of overturning a jury trial. Isn't that really a very different kind of a problem? I'm not sure it is, because I don't sit as a district judge. I am biased. I'm a litigant. And I think to a district judge sitting there, wondering, was this a fair trial? Did I give these individuals, defendants and plaintiffs, both a fair shake? This judge had serious issues with it and saw that it was going to be unfair, in his opinion. Now, he had serious issues because he didn't expect the jury to come back with any verdict for the plaintiffs, as he said. And then when they came back with a verdict for the plaintiffs, he was very disappointed. That you have to throw into the mix, let's say. But he did. Thank you. I would like to say that, in this very, very long day, that one of the reasons we sat here as long as we did, or at least I did, is that the arguments in general are excellent and these were excellent as well. Thank you. Thank you. Thank you very much. Thank you very much. Yes. Are you getting up to leave us or do you have a ---- No, as somebody said earlier, should I say thank you or should I? I'll say thank you. Thank you. Thank you. Thank you both very much. The case just argued will be submitted and we will all now retire permanently.
judges: Pollak, Reinhardt, Berzon